UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GROGERY J. GARBINKSI,<br>    PLAINTIFF, | :<br>:<br>: CIVIL ACTION NO. 3:10cv1191(VLB)<br>:<br>: JULY 24, 2012<br>:<br>:<br>: |
| v. | |
| NATIONWIDE MUTUAL INSURANCE;<br>COMPANY, ET AL.<br>    DEFENDANTS. | |

### MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO STRIKE AND FOR SANCTIONS [DKT. #102]

Plaintiff Gregory Garbinski ("Garbinski" or "Plaintiff") brings this action against Defendants Nationwide Mutual Insurance Company, et al. (collectively "Nationwide" or "Defendants"), alleging breach of contract of an Independent Contractors Agent's Agreement (the "Agent Agreement") (Count 1); violation of Connecticut's Franchise Act (the "Franchise Act" or "CFA"), Conn. Gen. Stat. § 42-133 (e)-(g) (Count 3); violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b (Count 4); and interference with business expectancy (Count 5). Before the Court is Defendants' motion to strike Plaintiff's Exhibits 8 through 46 of Garbinski's Affidavit [Dkt. # 93, Ex. 8-46] supporting Plaintiff's opposition to summary judgment, and for sanctions against Plaintiff in the form of excluding those documents from evidence in this case. Nationwide has also requested the Court to order Plaintiff to pay Nationwide's fees incurred in bringing the Motion to Strike. For the reasons stated hereafter, Defendants' motion to strike and for sanctions is granted.

1

**Procedural Background**

In September 2010, this Court adopted a scheduling order that set a discovery deadline of July 2011.  [Dkt. # 29 Scheduling Order]. On July 29, 2011, an Amended Rule 26(f) Planning Meeting Report was adopted, and the discovery deadline was extended to November 30, 2011. On September 28, Plaintiff moved for an extension until October 7 for the Expert Disclosure deadline, and this motion was granted by the Court. [Dkt. # 47-48]. On October 6, Plaintiff again moved for an extension of time for Expert Disclosure until October 14, which the Court granted. [Dkt. # 49-50]. On October 14, Plaintiff moved for extensions of the expert disclosure deadline until October 28 and the overall discovery deadline until December 31. [Dkt. # 51]. The Court again granted both extensions. [Dkt. # 52]. Plaintiff moved for another Expert Disclosure extension on October 28, and the Court granted an extension until November 9. [Dkt. # 54-55]. On November 9, Plaintiff moved for another extension of time for expert disclosure until December 9, and for overall discovery until January 31, 2012. [Dkt. # 56].  Plaintiff on November 10 amended their expert disclosure extension request to be January 20, 2012. [Dkt. # 57]. The motions for extension of time cited a series of excuses, some less credible than others, but none cited the Plaintiff's sequestration  or concealment of documents. Nor did the Plaintiff seek Court intervention to secure documents sequestered or concealed by anyone, despite the Court's having set and extended the discovery deadline repeatedly to accommodate the Plaintiff. The Court granted the last request, warning that no further extensions would be granted. [Dkt. # 59]. On January 31, 2012, the final discovery deadline as set by the Court, Plaintiff filed yet another motion for Extension of Time until February 28, 2012 in which he did not

2

assert that documents had been sequestered or concealed; nor did he seek judicial redress for such conduct. . [Dkt. # 70]. The Court denied this motion, noting that under Federal Rule of Civil Procedure 16(b), the Discovery deadline may only be extended for good cause and that Plaintiff had failed to demonstrate good cause bases in part on the numerous motions for extensions of time and the numerous extensions previously granted. [Dkt. # 71].

About three months after the final discovery deadline, Garbinski submitted over 2,500 pages of documents with his Response to Nationwide's Motion for Summary Judgment, some of which were responsive to Nationwide's earlier discovery request. [Dkt. # 93, Ex. 1-58].

### Legal Standard

Federal Rule of Civil Procedure 26(e) states that a party who has responded to discovery requests "must supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Federal Rule of Civil Procedure 37(c)(1) provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Additionally, the court, on motion and after giving an opportunity to be heard, "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Federal Rule of Civil Procedure 37(c)(1)(A). The purpose of Rule 37(c)(1) is to "prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp.2d 600, 607 (S.D.N.Y. 2004). Although "a bad-faith violation of Rule 26 is not required in order to exclude

evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

### Analysis

Nationwide has moved to strike Exhibits 8-46, a total of over 2,500 pages, which Garbinski submitted in support of his memorandum in opposition to Nationwide's Motion for Summary Judgment.  These documents were responsive to Nationwide's earlier discovery request and were never produced by Garbinski during the extended discovery period.  [Dkt. # 93, Ex. 1-58].  Nationwide argues that the delay in the production of these documents was not substantially justified as required by Rule 37(c)(1).

Garbinski alleges that he does have a substantial justification for the delay. Garbinski argues that he was unable to produce the documents contained in Exhibits 8-46 during the discovery period because said documents, which he originally stored at a property owned by Garbinski and his brother in Bedford, Pennsylvania, had been hidden by Garbinski's brother at an "undisclosed location and his brother refused to disclose said location to [Garbinski]." [Dkt. # 107, Mem. in Support of Pl.'s Objection to Defs.' Motion to Strike and for Sanctions at 2]. According to Garbinski, Garbinski's brother

> thereafter attempted to convince the Plaintiff to transfer his interest in the property to a third party in exchange for information of the location of the Exhibits and other business documents so that Plaintiff's brother could avoid the disclosure of said asset to the bankruptcy trustee who had been appointed in the bankruptcy proceeding filed by Plaintiff's brother.

[*Id*.].  Garbinski refused to participate in such a transaction, and Garbinski's brother refused to disclose the location of the Exhibits. [*Id*.].  Garbinski states that his father

4

then located the documents at a "golf club property" in Pennsylvania in late February 2012, and that Garbinski retrieved the documents and delivered them to his counsel in early March 2012. [*Id.* at 3-4].

These alleged facts do not constitute substantial justification for delay. First, there is no evidence in the record that Garbinski sought to use any of the legal means he had available pursuant to the Federal Rules of Civil Procedure, such as the Court's subpoena power, to compel production of these documents from his brother. Second, Garbinski has offered no admissible evidence to support his story. He did not submit an affidavit or declaration setting out these facts under penalty of perjury. Lastly, Garbinski failed to disclose to Nationwide the existence of these 2,500 pages of documents during the extended discovery period. In the words of Defendants, "[c]ommon sense would suggest that if Garbinski were not attempting to intentionally sandbag Nationwide, he would have disclosed the existence of these 2,500 pages of documents to Nationwide – even if he couldn't produce them – back in May 2011 when Nationwide requested all documents that Garbinski claimed supported his franchise claim." [*Id.* at 3]. Instead, Garbinski did not mention the documents at all and did not disclose their existence to Nationwide until his Response to Nationwide's Motion for Summary Judgment.[1] [Defs.' Reply in Support of Motion to Strike and for Sanctions at 3]. Nationwide correctly describes

---

[1] Nationwide had asked Garbinski in an interrogatory in May 2011 to "[i]dentify the factual and legal basis for each way you contend Nationwide violated the Connecticut Franchise Act." [Dkt. # 103-2 at 7]. Garbinski responded by referring to his Complaint and the requirements of the Connecticut Franchise Act: "<u>ANSWER:</u> See allegations of the Complaint as to factual basis of the violation of the Conn. Franchise Act and see the requirements of the Conn. Franchise Act for the legal basis of said violation." [*Id.*].

this as "classic sandbagging," [*Id.*], of which the very purpose of Rule 37(c)(1) is to prevent.

Nationwide relies upon *Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 85 (2d Cir. 2008) in support of its Motion to Strike and for Sanctions, and this Court agrees that *Haas* is particularly on point in the present case. In *Haas*, the defendant served interrogatories upon the plaintiff requesting that plaintiff identify witnesses he intended to call to testify as to defendant's notice of an alleged negligent condition, any person who had knowledge of the negligent condition, and other evidence pertaining to notice. *Id.* at 85. Plaintiff responded by referring to his complaint and did not mention any person who was a potential witness or who had knowledge of the negligent condition. *Id.* Later, in opposition to defendant's motion for summary judgment, plaintiff attached an affidavit [the Sheehan Affidavit] by someone with knowledge of the negligent condition. *Id.*

The *Haas* plaintiff argued that his "failure to appreciate [the Sheehan Affidavit's] significance until [defendant] moved for summary judgment was 'not intentional." *Id.* Rather, he argued that he obtained the Sheehan Affidavit "as part of 'a final attempt to uncover any pre-accident information regarding the [alleged negligent condition] given the lack of evidence of prior problems . . . provided in discovery.'" *Id.* The plaintiff also noted that he had also mentioned Sheehan during his deposition.

The Second Circuit in *Haas* found that the district court did not abuse its discretion in excluding the Sheehan Affidavit. *Id.* at 87. Plaintiff's counsel offered "no adequate explanation for this untimely disclosure," and even though the delay was apparently caused by counsel's oversight and neglect rather than bad faith,

6

"bad faith is not required." *Id.* at 86. Furthermore, plaintiff's references to Sheehan in the deposition "neither suggest[ed] in any way that Sheehan ha[d] information relevant to Haas's accident nor serve[ed] to amend his responses." *Id.* at 85. Thus, there was no substantial justification for the delay. *Id.* at 86.

In the present case, Garbinski attempts to distinguish *Haas* by a mere assertion that while there was no substantial justification shown in *Haas*, substantial justification has been shown here. [Dkt. # 107 at 6]. But, as stated above, Garbinski has offered nothing more than a convoluted excuse and no admissible evidence to support that excuse. While the delay in *Haas* was apparently due solely to counsel's neglect and that was enough to support a finding of no substantial justification, here the failure of Garbinski in the present case to even mention the existence of the 2,500 pages of documents – when he obviously knew about them and had stored them at his property – at the very least suggests that Garbinski acted in bad faith by delaying their disclosure.

Also, as in *Haas*, this Court finds that Garbinski's claim that Nationwide itself committed discovery violations "lacks support and comes only at this late juncture." *Haas*, 282 F. App'x at 86. That Nationwide was allegedly familiar with the documents produced by Garbinski along with his objection to summary judgment "does not diminish the prejudice caused by waiting until after the close of discovery and, moreover, after [Nationwide] had prepared and filed its motion for summary judgment." *Id.*

It appears that Garbinski requested documents from Nationwide in Request No. 14 of his First Request for Production. [Dkt. # 107-1]. However, Nationwide properly objected to this request. [*Id.*]. If Garbinski believed Nationwide should have

produced these documents, "his recourse was to move the Court to compel Nationwide to produce. But instead he sat idly by for almost two years and never mentioned their existence, and then dropped them in Nationwide's lap *after* he had been deposed, *after* the close of discovery, and *after* Nationwide had filed its dispositive motion." [Dkt. # 108 at 4] (emphasis in original). Furthermore, Garbinski only requested documents after 2003, while many of the 39 exhibits that Nationwide has moved to strike were provided to agents before 2003.

Most importantly, allowing these documents now would be enormously prejudicial to Nationwide. The discovery period has long been closed, even considering the multiple generous extensions granted by the Court, Nationwide has had no opportunity to meaningfully examine these documents prior to its Motion for Summary Judgment. Garbinski appears to assert that because Nationwide obtained disclosure of the exhibits from Garbinski prior to filing its Reply to the Plaintiff's Objection to Motion for Summary Judgment and because Garbinski has no objection to reopening deposition of the Plaintiff and inquire about the exhibits in preparation for trial, the level of prejudice is somehow acceptable. However, the prejudice to Nationwide is manifest and allowing Garbinksi's deposition to be reopened would only cause further delay and waste additional resources.

The conduct by Garbinski, where he has submitted 2,500 pages of documents that were directly responsive to a previous interrogatory served by Nationwide, where those documents were attached to a response to a summary judgment motion, where those documents were submitted three months after the close of discovery, and where he offers only a far-fetched and "convoluted excuse" patently does not constitute substantial justification for delay. Therefore, this Court grants

8

Nationwide's Motion to Strike and for Sanctions [Dkt. # 102] as to the manually filed Exhibits 8 through 46 of Garbinski's Affidavit [Dkt. # 93, Ex. 8-46]. Those Exhibits are excluded from being admitted as evidence at any trial, hearing, or motion in this case. Additionally, this Court orders Garbinski and/or his counsel to pay Nationwide's fees incurred in bringing its Motion to Strike and for Sanctions. Nationwide is directed to submit an affidavit as well as detailed billing statement that sets forth actual compensation and expenses incurred in bringing this motion to strike and for sanctions.

### Conclusion

Based upon the above reasoning, Defendants' [Dkt. #102] motion to strike and for sanctions is GRANTED.

                                        IT IS SO ORDERED.


                                        _____/s/_____
                                        Hon. Vanessa L. Bryant
                                        United States District Judge


Dated at Hartford, Connecticut this 24th day of July 2012